French, J.
*156 {¶ 1} We are asked to resolve a certified conflict between judgments of the Second District Court of Appeals and the Fifth and Eighth District Courts of Appeals on the question "[w]hether a criminal defendant on [postrelease control] for a prior felony must be advised, during his plea hearing in a new felony case, of the trial court's ability under R.C. 2929.141 to terminate his existing [postrelease control] and to impose a consecutive prison sentence for the [postrelease-control] violation." 152 Ohio St.3d 1404, 2018-Ohio-723, 92 N.E.3d 877. We conclude that Crim.R. 11(C)(2)(a) requires that advisement. We answer the certified question in the affirmative and affirm the judgment of the Second District Court of Appeals.
I. Facts and Procedural History
{¶ 2} While on postrelease control for a prior felony conviction, appellee, Dustin Bishop, was indicted on one count of possession of heroin, a fifth-degree felony, and one count of possession of drug paraphernalia, a misdemeanor.
{¶ 3} Bishop pleaded guilty to the possession count, and the state dismissed the drug-paraphernalia count. At Bishop's plea hearing, the trial court informed Bishop that the court could place him on postrelease control for the possession offense. It also informed him that if he committed a new felony while on that postrelease control, the court could sentence him to serve one year in prison or the time remaining on his postrelease control, whichever was longer. The trial *157 court did not inform Bishop that once he pleaded guilty to the possession offense, the court would have the authority under R.C. 2929.141 to terminate Bishop's existing postrelease control and impose a prison term that he would serve consecutively to the term of imprisonment imposed for the possession offense. The trial court accepted Bishop's guilty plea and set the matter for sentencing.
{¶ 4} The trial court sentenced Bishop to serve a nine-month term of imprisonment for the possession offense. For the postrelease-control violation, the court ordered Bishop to serve a one-year prison term under R.C. 2929.141 consecutively to the sentence for the possession offense.
{¶ 5} Bishop appealed to the Second District Court of Appeals, raising two assignments of error. Bishop first argued that he had not knowingly, intelligently, and voluntarily pleaded guilty to the possession offense because the trial court had not informed him of its authority under R.C. 2929.141 to terminate his postrelease control and to order him to serve a prison term consecutively to any term of imprisonment imposed for the felony offense to which he was pleading guilty. The appellate court, relying on its prior decisions in State v. Branham , 2d Dist. Clark No. 2013 CA 49, 2014-Ohio-5067, 2014 WL 6090404, and *769 State v. Landgraf , 2d Dist. Clark No. 2014 CA 12, 2014-Ohio-5448, 2014 WL 7004830, sustained Bishop's first assignment of error and concluded that the trial court erred by failing to advise Bishop, at the time of his plea, that he could have to serve an additional, consecutive sentence for his current postrelease-control violation. 2017-Ohio-8332, ¶ 7. The appellate court deemed Bishop's second assignment of error moot, reversed the trial court's judgment, vacated Bishop's guilty plea, and remanded the matter for further proceedings. Id. at ¶ 8-9.
{¶ 6} The appellate court, upon the state's motion, certified that its decision conflicted with the Fifth District Court of Appeals' decision in State v. Hicks , 5th Dist. Delaware No. 09CAA090088, 2010-Ohio-2985, 2010 WL 2595153, and the Eighth District Court of Appeals' decision in State v. Dotson , 8th Dist. Cuyahoga No. 101911, 2015-Ohio-2392, 2015 WL 3819178. The state filed a notice of certified conflict and a jurisdictional appeal in this court. We determined that a conflict exists and consolidated the conflict case with the state's jurisdictional appeal. 152 Ohio St.3d 1404, 2018-Ohio-723, 92 N.E.3d 877.
II. Intervening Trial-Court Proceedings
{¶ 7} According to the state's merit brief, on January 29, 2018-after the state had appealed the court of appeals' judgment to this court but prior to our accepting jurisdiction-the trial court accepted Bishop's new guilty plea to the same possession offense and sentenced him to time served. We must address whether this case is moot.
*158 {¶ 8} Nothing in the record before us confirms that the trial court did, in fact, accept a new guilty plea. But even if the court did accept a new plea, we have held that we may resolve a matter, even if it is moot with respect to the parties, when it involves an issue of great public or general interest that will outlive the instant controversy. See, e.g. , Franchise Developers, Inc. v. Cincinnati , 30 Ohio St.3d 28, 31, 505 N.E.2d 966 (1987). We have recognized this exception to the mootness doctrine in other certified-conflict cases and held that it was appropriate to resolve the question of law presented. State v. Massien , 125 Ohio St.3d 204, 2010-Ohio-1864, 926 N.E.2d 1282, ¶ 4, fn. 1 ; State v. Brooks , 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 5. For this reason, we proceed to consider the certified-conflict question.
III. Analysis
{¶ 9} Turning to the merits, we confront a conflict between judgments of the Second District Court of Appeals and the Fifth and Eighth District Courts of Appeals regarding an interpretation of the requirements of Crim.R. 11(C). The Second District Court of Appeals has held that the trial court must inform a defendant who is on postrelease control and is pleading guilty to a new felony offense of the trial court's authority to revoke the defendant's postrelease control and impose a prison term to be served consecutively to any term of imprisonment it imposes for that new felony offense. See 2017-Ohio-8332 at ¶ 7 ; Branham , 2d Dist. Clark No. 2013 CA 49, 2014-Ohio-5067, at ¶ 14. The Second District has interpreted that requirement to be part of the trial court's duty under Crim.R. 11(C)(2)(a) to advise the defendant of "the maximum penalty involved." See Landgraf , 2d Dist. Clark No. 2014 CA 12, 2014-Ohio-5448, at ¶ 23 (lead opinion). In contrast, the Fifth and Eighth District Courts of Appeals have held that Crim.R. 11 does not require the trial court to inform the defendant of the possible effects of his guilty plea to a new offense on his postrelease control. Hicks , 5th Dist. Delaware No. 09CAA090088, 2010-Ohio-2985, at ¶ 10-13 ( Crim.R. 11(D) did not require the trial court to inform *770 the defendant, who was pleading guilty to a misdemeanor offense, of the possible effects of his plea on his postrelease control); Dotson , 8th Dist. Cuyahoga No. 101911, 2015-Ohio-2392, at ¶ 13 ( Crim.R. 11(C) did not require the trial court to inform the defendant, who was pleading guilty to a felony offense, of the possible effects of his plea on his postrelease control).
{¶ 10} A criminal defendant's choice to enter a guilty plea is a serious decision. State v. Clark , 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid. Id.
{¶ 11} Crim.R. 11(C) prescribes the process that a trial court must use before accepting a plea of guilty to a felony.
*159 State v. Veney , 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. The trial court must follow certain procedures and engage the defendant in a detailed colloquy before accepting his or her plea. Clark at ¶ 26 ; see Crim.R. 11(C). The court must make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require and must notify the defendant of the constitutional rights that Crim.R. 11(C)(2)(c) identifies. Veney at ¶ 13. While the court must strictly comply with the requirements listed in Crim.R. 11(C)(2)(c), the court need only substantially comply with the requirements listed in Crim.R. 11(C)(2)(a) and (b). Id. at ¶ 18.
{¶ 12} Most relevant here, Crim.R. 11(C)(2) includes the following among the determinations a trial court must make:
(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
{¶ 13} We must also consider the specifics of R.C. 2929.141. That statute provides that when a defendant who is on postrelease control is convicted of or pleads guilty to a new felony, the trial court may terminate the postrelease-control term and convert it into additional prison time. R.C. 2929.141(A)(1). This additional penalty is often referred to as a "judicial sanction." See, e.g. , State v. Grimes , 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 25. The additional term can be as long as the greater of 12 months or the amount of time that remained on the existing postrelease-control term. R.C. 2929.141(A)(1). The court is not required to impose an additional prison term for the violation. See id. But if it does, the defendant must serve the additional term consecutively to the prison term for the new felony. Id.
A. Crim.R. 11(C)(2)(a) -The "maximum penalty involved" includes the potential R.C. 2929.141(A) sentence
{¶ 14} At issue here is the impact of R.C. 2929.141(A) on the portion of Crim.R. 11(C)(2)(a) that requires a trial court to ensure during the plea hearing that the defendant is entering his guilty plea "with understanding of the nature of the charges and of the maximum penalty involved." In arguing that the trial court need not inform a defendant of a potential consecutive prison term under R.C. 2929.141(A), appellant, the state of Ohio, bypasses the plain language of the statute and the rule and looks instead to this court's decision in State v. Johnson , 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988). In Johnson , we reasoned that neither the United States Constitution nor the Ohio Constitution requires a trial court to *771 *160 inform a defendant during his plea hearing of the maximum total of the sentences he faces or that the sentences can be imposed consecutively. Id. at 133, 532 N.E.2d 1295. Regarding Crim.R. 11, we said that "[i]t would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding." Id. We concluded that because the trial court in Johnson explained to the defendant the individual maximum sentences possible, his guilty plea was proper. Id.
{¶ 15} Crim.R. 11(C)(2)(a) has been amended since Johnson so that a single plea can now apply to multiple charges, see 83 Ohio St.3d xciii, cix (effective July 1, 1998). Nevertheless, the state argues that the rule's advisements still apply only to the "maximum penalty involved" for the crimes to which the defendant pleads guilty. We disagree.
{¶ 16} First, what happened to the defendant in Johnson is a far cry from what happened to Bishop. Johnson was told of his potential sentences for each individual offense; the trial court just failed to tell Johnson the sentences for each offense could run consecutively. Here, the trial court told Bishop that he could receive a maximum sentence of 12 months for his fifth-degree-felony conviction. But the trial court did not tell Bishop that he was also subject to a separate consecutive 12-month sentence for his postrelease-control violation.
{¶ 17} Second, and more importantly, we must look to the plain language of the statutes involved. R.C. 2929.141(A)(1) provides that "[u]pon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the term of post-release control" and impose a consecutive prison term. Sentences imposed under R.C. 2929.141(A) cannot stand alone. The court may impose the sentence only upon a conviction for or plea of guilty to a new felony, making the sentence for committing a new felony while on postrelease control and that for the new felony itself inextricably intertwined. By any fair reading of Crim.R. 11(C)(2), the potential R.C. 2929.141(A) sentence was part of the "maximum penalty involved" in this case.
B. Bishop need not show prejudice
{¶ 18} Finally, Bishop need not show that the trial court's error prejudiced him-i.e., that he would not have entered the guilty plea if he had known that the trial court could terminate his existing postrelease control and convert it into additional prison time, see State v. Nero , 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), citing State v. Stewart , 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977).
{¶ 19} A trial court need only substantially comply with the nonconstitutional advisements listed in Crim.R. 11(C)(2)(a).
*161 Veney , 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 18. But "[w]hen the trial judge does not substantially comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court partially complied or failed to comply with the rule." (Emphasis sic.) Clark , 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." Id. But if the trial court completely failed to comply with the rule, the plea must be vacated. Id. Complete failure " 'to comply with the rule does not implicate an analysis of prejudice.' " Id. , quoting *772 State v. Sarkozy , 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.
{¶ 20} Here, the trial court completely failed to inform Bishop that a consecutive prison sentence under R.C. 2929.141(A) was possible. That is not partial compliance. Bishop need not show prejudice.
IV. Conclusion
{¶ 21} We conclude that Crim.R. 11(C)(2)(a) requires a trial court to advise a criminal defendant on postrelease control for a prior felony, during his plea hearing in a new felony case, of the trial court's authority under R.C. 2929.141 to terminate the defendant's existing postrelease control and to impose a consecutive prison sentence for the postrelease-control violation. We therefore answer the certified question in the affirmative and affirm the judgment of the Second District Court of Appeals.
Judgment affirmed.
O'Connor, C.J., and O'Donnell, J., concur.
DeWine, J., concurs in judgment only, with an opinion.
Kennedy, J., dissents, with an opinion.
Fischer, J., dissents, with an opinion joined by Brown, J.
Susan D. Brown, J., of the Tenth District Court of Appeals, sitting for DeGenaro, J.
DeWine, J., concurring in judgment only.
{¶ 22} I agree that the judgment of the court of appeals should be affirmed. The potential sentence for a postrelease-control violation is part of the "maximum penalty involved" when a defendant pleads guilty to a new felony. I write separately, however, because I disagree with the lead opinion's dictum about mootness.
*162 {¶ 23} There is no question that this case is not moot. As the lead opinion notes, there is nothing in the record to confirm that the trial court accepted Dustin Bishop's guilty plea following the state's notice of appeal to this court. And even if the trial court did act, its order would be void because it acted without jurisdiction.
{¶ 24} In its decision on October 27, 2017, the court of appeals remanded this case for resentencing by the trial court. The state filed a timely notice of appeal on December 7, 2017. According to the state's merit brief, before this court had accepted jurisdiction, the trial court, acting on the remand order, resentenced Bishop. But once the notice of appeal was filed in this court, the trial court was divested of jurisdiction. We were confronted with a similar situation in State v. Washington , 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, in which, after the state filed a notice of appeal but before this court accepted jurisdiction, the trial court acted on a remand order to resentence a defendant. The defendant moved to dismiss the state's appeal as moot. This court denied the motion:
"An appeal is perfected upon the filing of a written notice of appeal. Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." Thus, the trial court in this case had no jurisdiction to resentence the defendant once the state had filed its notice of appeal.
(Citations omitted.) Id. at ¶ 8, quoting In re S.J. , 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9. Likewise, the trial court here had no jurisdiction to resentence *773 Bishop. Therefore, even if the trial court did act, its order would be void and the state's appeal would not be moot.
{¶ 25} Because the state's appeal is not moot, there is no need to digress into a discussion of the propriety of considering certified-conflict questions in moot cases. But because the lead opinion takes that path, I write to explain why I believe its dictum is misguided.
{¶ 26} The Ohio Constitution vests the "judicial power of the state" in "a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law." Ohio Constitution, Article IV, Section 1. While the language of our Constitution does not mirror the "cases" and "controversies" language of the United States Constitution, see United States Constitution, Article III, Section 2, it is generally understood that the grant of the judicial power requires that we decide only "actual controversies where the judgment can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter at issue in the *163 case before it," Travis v. Pub. Util. Comm. , 123 Ohio St. 355, 359, 175 N.E. 586 (1931). When a case becomes moot, there is no longer a controversy for this court to decide.
{¶ 27} We have recognized exceptions to this principle and have decided cases that were moot after having found that the issues presented were capable of repetition yet evading review. See Adkins v. McFaul , 76 Ohio St.3d 350, 350-351, 667 N.E.2d 1171 (1996). But there is no reason to believe that the issue in this case-plea-hearing requirements for defendants currently on postrelease control-will evade review. Nor does the fact that this case raises a question of public or great general interest militate against applying the mootness doctrine. By definition, many cases we accept on jurisdictional appeal involve questions of "public or great general interest pursuant to Article IV, Section 2(B)(2)(e) of the Ohio Constitution." S.Ct.Prac.R. 5.02(A)(3). But being of public or great general interest has never been considered sufficient to allow us to decide a jurisdictional appeal that has been rendered moot by subsequent events.
{¶ 28} Despite the constitutional provision tying our authority to the judicial power, the justices joining the lead opinion apparently believe that different rules apply to appeals that come to us as certified conflicts. But like our review of jurisdictional appeals, our review of certified-conflict questions depends on the existence of a case. If a court of appeals finds that its judgment conflicts with that of another court, it certifies "the record of the case to the supreme court for review and final determination ." (Emphasis added.) Ohio Constitution, Article IV, Section 3 (B)(4); see S.Ct.Prac.R. 8.02(D). Unlike certified state-law questions from federal court, which we answer without deciding the underlying case, we decide certified-conflict cases and enter judgment. If a case becomes moot, there is no controversy for us to decide and we should dismiss it.
{¶ 29} But all of this discussion is unnecessarily advisory. This case is not moot. We should limit our discussion to the controversy before us.